## MAY TERM, 1869.

### In the matter of the probate of the will of Henry Vanderveer, deceased.

1. The evidence held clearly to establish the testamentary capacity of testator.

2. Where the requirements of the statute, necessary to establish a will, have been fully complied with, and that fact is clearly and positively testified to by two unimpeached and respectable witnesses, the fact that important parts of the will differ from the well known and often declared intentions of the testator, before and at the time of dictating the will, and which he retained afterwards, and contrary to his settled views about his property, will not, in the absence of any proof of influence, or attempt to exercise it, over the testator, suffice to induce the court to refuse its admission to probate, and particularly where parts of the will were in accordance with the clearly established testamentary intention of the testator.

3. In a case where there is great doubt upon the evidence, the court will not reject so much of the will of the testator as from fraud in its insertion, or other cause, is not to be taken as his will, and admit the residue to probate.

4. Fraud in the making of a will should not be inferred because it was possible or even probable, but should be shown by positive proof, or circumstances of such force as not to permit of serious doubt.

This cause came on for hearing upon depositions taken before the register on part of the respective parties.

*Mr. B. Williamson* and *Mr. Bartine,* for proponent.

*Mr. Wurts, Mr. C. Parker,* and *Mr. Shipman,* for caveators.

· The Ordinary.

In this case, the fact of the execution of the will is clearly proved by three witnesses, the two subscribing witnesses, Naylor and Wight, and F. F. Cornell, the executor, who offers it for probate. They also prove the testamentary

capacity of the testator; in fact, the general capacity of the testator, although he was about eighty-eight years old, is not seriously disputed. There is abundant evidence of capacity before and after the execution of the will, and he lived three years after this. His capacity for business on the very day is shown by Vanarsdale, a witness for the caveators, and there is no evidence showing want of capacity. His hearing was somewhat impaired, but he was not deaf; his sight was much affected, and for the purposes of this case he must be considered as blind; it is clear that he could not read this will. He had suffered a very severe attack of disease of some kind in the evening or the night before this will was executed, the effect of which remained on him for some time afterwards, and, according to his own account, continued for some time to affect his mind and confuse his intellect; he supposed he had been poisoned. But still the evidence is, that on that day he had possession of his faculties, and talked rationally about his business.

There is no proof of either the possession of influence over him by Mr. Cornell, or any undue exercise of it, such as to affect the validity of this will. In fact, there is no proof up to this time of any influence or any attempt to exercise it over him by Cornell.

Where a testator is blind, as in effect he was, it must be shown that he knew the contents of the will before it was executed by him. This is shown positively by Wight, who drew the will; he testifies that before he committed to writing each provision of it, he stated such provision distinctly to the testator; and by Wight and Cornell, who both state that before Naylor came, the will was read over in testator's presence.

The real difficulty in the case arises from the fact that important parts of the provisions of the will differ from what was his well known and often declared intentions, before and at the time of dictating the will, and which there is reason to believe he retained afterwards, and are contrary to his settled views and peculiar notions about his property.

In re will of Henry Vanderveer.

He was a man of education and intelligence, a physician by profession, and had never been married. He was born and had always lived upon his estate, which he had named Vanderstade, consisting of a tract of seven or eight hundred acres, which his grandfather had bought in its forest state, and had reduced to cultivation. One part of this he had inherited from his father, the other he had purchased of the heir of his father's brother. In five drafts of wills found among his papers, in his own handwriting, three of which had been completed with great care, and two were signed, but not attested, he had stated that his *great wish*, above all others, was to preserve this estate in the blood and name of his family. The only relatives of the blood and name of the Vanderveer family, or of the ancestry, from whom this estate came, were his cousin, Dr. Henry Vanderveer, of Somerville, and his three children, Lawrence, John, and Louisa. In all these wills he had given this estate to Lawrence and the male heirs of his body, and in default of such heirs, to the heirs male of John ; and had made their father, Henry Vanderveer, who was about thirteen years younger than himself, the executor of them. The will was written on the day it bears date, August 23d, 1865, from instructions given to Edwin M. Wight, the lawyer who drew it, after he arrived there, about four o'clock in the afternoon, and less than three hours before its completion. In these instructions he said he wanted to keep the place as a memorial, and to leave it in the Vanderveer name, and would like to tie it up in a trustee forever if he could; and when informed that he could not, but could for two lives, said he would give it to one of the Vanderveer boys for his life, and named Lawrence, and, after his death, directed it to go to his heirs.

The will in question gives all the estate, real and personal, to F. F. Cornell, the executor, as trustee, during the life of Lawrence Vanderveer, who is about thirty-five years of age, and was never married, with power to expend any part or the whole of the income of all the estate, in improving Van-

derstade, at his discretion; the balance of the income to be paid to Lawrence Vanderveer; and at his death the whole estate to go to his male issue, if any, and in default of such issue, to F. F. Cornell, jun., the oldest son of the trustee and executor. The issue of John Vanderveer, who had been in the other wills directed to succeed for want of male issue of Lawrence, were not mentioned, although John had, during the instructions, been spoken of by the testator, and he was the second life in being, for which the testator had been told he could tie up this property, in his anxious endeavors to tie it up as long as he could; and this was told him, both during the instructions and by Mr. Cornell, as the result of inquiries made of different counsel at the urgent request of the testator, for the very purpose of framing this will. In this will, too, the testator omitted to provide for a family of negro servants, who had for years been first slaves and then retainers in the family, and who had remained with him, and were his only constant family and household after the death of his maiden sister, which had occurred some years before. These were provided for in the wills drawn by himself. No other person or object was named or provided for in this will. The will only contained four provisions: the first, giving unlimited control of everything to the trustee; the second, giving any residue of the income that the trustee might not choose to expend in improvements or salaries of agents, to Lawrence; the third, giving the whole at Lawrence's death to his male issue; the fourth, on failure of such issue, giving the whole to the oldest son of the trustee, then an unmarried man of twenty-five, and whom, so far as appears, the testator had never seen.

By this, neither the title nor the possession of the property can be in any one of the blood or name of Vanderveer, as long as Lawrence, the only one of the name provided for, shall live, that is, according to the usual probabilities of life, for about thirty years; and the amount of income which he may receive depends upon the discretion or fancy of the trustee in improving. A gift of the homestead, and the

In re will of Henry Vanderveer.

income of the residue to him for life, would have been ac-
cording to the known intention of the testator, as is the
limitation to his male issue after his death. But the residue
of the will, especially the unlimited power of indulging
his taste or disposition for improvements, and of employ-
ing agents *ad libitum*, at the expense of the estate, is so
contrary to the known intentions and views of the testator,
that it is .exceedingly difficult to believe that he ever under-
standingly made these provisions; yet it is not impossible
that he did make them; and the fact that he did make them
is testified to by two witnesses, whose characters are unim-
peached, and who are not in this matter directly contradicted
by any one.

Mr. Wight is a lawyer, and has practiced as such in the
city of New York for several years, and has resided at
Somerville for three years. His profession is a respectable
one, and although there may be members of it in the city
where he practices, of bad character for integrity, yet a large
proportion of them are men of high character. If he had
been wanting in character, something might have been
shown which would have affected his credit, and enabled the
court to give only such weight to his testimony as it might
deserve.

Mr. Cornell, the other witness, is a native of the state, and
has spent much of his life in Somerset county, where he is
well known. He is, and has been for years, a clergyman of
good repute in two most respectable denominations of simi-
lar creed and character; he is the son of a clergyman, and
has brothers and brothers-in-law who are clergymen, and he
is descended from a family well known in the state, whose
name has, for generations, been regarded as a guaranty of
pure and elevated character. Had he, in such a position,
fallen from this standard, it would have been marked against
him, and might have been brought to bear upon his credi-
bility in this cause.

It is difficult to disregard the clear and positive evidence
of two such witnesses, uncontradicted, solely upon what ap-

pears to me the mere improbability of such dispositions having been made by the testator.

There are some contradictions of both, by other witnesses, in collateral matters, that go to shake either their credibility, or the accuracy or credibility of these witnesses who prove them. But I do not think, on the whole, that they are sufficient to affect their credibility seriously.

There is more, in my opinion, in the story which each of them has told about his dislike of the position in which he is placed in this will, to create distrust, than in the contradictions of others. Mr. Cornell says that he was dissatisfied with the position in which he was placed in the will, on the ground that the relatives of the testator showed ill feeling, and with the position of his son, because it would be demoralizing for *a child to grow up* with the idea of being made rich by another's death. It is difficult to believe in the truthfulness of the reason as to his own position, as he must have known, when he assented to become executor in such a will as this, that almost all the testator's relatives would be dissatisfied; and his extreme haste and eagerness, after testator's death, to prove the will, in violation of the usual regard shown to the funeral rites, and of the delay required by law, showed that he had but little regard to public opinion, or the dissatisfaction of any of the disappointed. The fear for *a child growing up* seems misplaced for a counselor-at-law of twenty-five, engaged in practice, and largely in other business of a mercantile nature, especially in a father of a large family, growing up with the knowledge that at his death, or that of their mother, each would come to a large estate. He must have been inured to the anxiety, and should have reflected that the mature mind of his oldest son could have borne the prospect of a fortune contingent in itself, and which could never devolve upon him, except at the end of a life, the probable duration of which was thirty years. The honesty or sincerity of this pretence, suggested to the testator, cannot be believed. Wight says, too, that *he felt the great injustice and hardship of a position by him*

*assumed in signing the first will as a witness.* If he really felt it, he could have been relieved by having the will taken to the testator, and read over and re-executed in the presence of two indifferent witnesses. But the great difficulty arises from his conclusion that there was hardship in the position of being a witness to the will of a testator of full capacity and independent position, and on whom no relative had any peculiar claim, unless he was conscious that there was something wrong in the concoction or execution of this will, or in what he would be required to testify, in order to support it. It is usual for a lawyer to attest any will drawn by him, in which he is neither a beneficiary or executor, without any feeling of hardship or injustice.

These pretences of these witnesses, which I cannot but regard as insincere and untruthful, have somewhat impaired their standing, in my view. But yet, men often gloss over and apologize for their conduct, in certain cases, with excuses devised for the purpose, and which they half believe, who would not, under oath, testify to a direct untruth.

It is difficult to adopt any theory by which this will, or any part of it, can be rejected, which does not involve the veracity and character of these two witnesses.

Besides, if this will is rejected, a part of what is the clearly established testamentary intention of the testator, which he supposed that he had provided for, and which this will will carry into effect, would be thereby defeated. He, without doubt, intended to make provision for Lawrence during his life, out of the income; this will will give effect to that intention, at least to a great extent, for the seemingly unlimited power to expend the whole in improvements, and in employing agencies if he should attempt to exercise it, may be restrained within proper limits by the courts. And the gift of the whole on the death of Lawrence to his male issue, is, beyond doubt, one of the long cherished intentions of the testator. If the whole will is rejected, and the testator declared to have died intestate, this result must follow. And I am not prepared, in a case where there is so much doubt,

upon the evidence, to introduce, for the first time, in New Jersey, the rule which has been adopted and repeatedly acted upon by the probate courts in England and New York, that if part of a will, from fraud in its insertion, or any other cause, is not to be taken as the will of the testator, the residue may be admitted to probate, and the part which is not his will rejected, and not recorded or copied in the transcript annexed to the probate.

Lord Chancellor Cowper, in *Plume* v. *Beale*, 1 *P. W.* 388, refused relief against a legacy of £100, interlined in the will of the testatrix, by Mrs. Beale, while watching the corpse in the room where the will was, and placed his refusal on the ground that the spiritual or probate court had power to prove the will, with a reservation of this legacy. Sir George Hay, in *Barton* v. *Robins*, 3 *Phil.* 442, note *b*, admitted part of a will, and rejected the residue; his judgment was affirmed in the Court of Delegates, in 1769. Sir John Nicholl, in *Billinghurst* v. *Vickers*, 1 *Phil.* 187, pursued the same course. Surrogate Bradford, of New York, in the case of *Burger* v. *Hill*, 1 *Bradf.* 360, approved and acted upon the same doctrine, and sustains it by many precedents. One of his predecessors, Surrogate Campbell, a judge of reputation on testamentary matters, in 1833, in the case of the will of Catharine C. Young, in an opinion which is not preserved or reported, but which I have read, admitted part of the will to probate on evidence like that in this case, showing that the part retained was according to her well known intentions declared to her family, and on proof that the part rejected differed from such intentions and was, at the instance of those by whom she was surrounded, put in a will executed in extreme illness when there was some reason to doubt her capacity to change her cherished intention. And, although in a subsequent decision, upon the same will in this court, by P. Dickerson, ordinary, the whole will was admitted to probate, it was because the court did not reach the same conclusion from the evidence, and not because of a different view of the power

of the court. In this case, by admitting the will to probate, except paragraphs marked *a* and *c*, and the part of paragraph *d*, after the word "surviving," the provisions of the will remaining would give effect to intentions which all admit were adopted by the testator, and would exclude the parts contested by the caveators, and over which serious doubt is thrown. The gift of the income of the lands to Lawrence for life, would give him the estate. The provisions omitted could not, by the force of the statute of wills now in force, be supplied. Though this, in England, was done before the statute of Victoria.

I have had great doubt whether I ought not to adopt this course with regard to this will. But notwithstanding all those considerations, and the great difficulty I have in really believing that the testator, understandingly, could have executed a will like this, I do not feel at liberty to disregard the evidence of two unimpeached and respectable witnesses, who clearly and positively testify to the facts necessary to establish this will. Courts and jurors must be cautious in rejecting positive testimony, and should never disregard it simply because of their own theories of its probability or improbability. And fraud should not be inferred, because we see it was possible or even rather probable; but it should be shown by positive proof or circumstances of such force as not to permit of serious doubt.

For these reasons I have been constrained to come to the conclusion to admit this will to probate entire. And if I should err in this result to which I have arrived, not without great distrust of its correctness, I am relieved by the fact that since this cause came into court, an act has been passed giving an appeal to a court composed of judges whose learning and ability will give relief from any errors into which I may have fallen, and whose numbers will give authority to, and confidence in their decision. And if they should differ from me in their view of the facts, their authority will finally settle the practice to be pursued in such

case, where one part of a will is, and another is not, the true will of the testator.

In this case, as there were clearly reasonable grounds for the action of the caveators in contesting this will to the full extent in which it has been done, their costs and expenses, including proper counsel fees, must be paid out of the estate.